UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERICA KRISTEN HOPKINS,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

No. 2:18-cv-00855 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1973, applied on August 26, 2014 for disability insurance benefits, alleging disability beginning January 2, 2012. Administrative Transcript ("AT") 15, 54-55. Plaintiff alleged she was unable to work due to seizures, multiple sclerosis, migraines, and depression. AT 54. In a decision dated February 1, 2017, the ALJ determined that plaintiff was

1

not disabled.[1]  AT 15-27.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since January 2, 2012, the application date.
>
> 3. The claimant has the following severe impairments: multiple sclerosis, migraine headaches, and mood disorder.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work, except that she is never able to climb ladders, ropes,

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

or scaffolds. She is able to frequently balance and occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. She must avoid concentrated exposure to hazards, defined as operational control of dangerous, moving machinery and unprotected heights. The claimant is limited to performing simple, routine, and repetitive tasks. She is limited to occasional face to face interaction with the public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XX/XX/1973, and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has at least a high-school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 2, 2012 through the date of this decision.

AT 15-27.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly discounted the opinion of treating neurologist Dr. Dengel; (2) the RFC failed to account for plaintiff's moderate limitations in concentration, persistence, and pace; and (3) the ALJ's improperly discounted plaintiff's credibility.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th

3

Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinions

Plaintiff asserts that the ALJ improperly discounted the opinions of neurologist Dr. Michael Karsten Dengel, plaintiff's primary treating doctor for multiple sclerosis (MS).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be

4

rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Dr. Dengel diagnosed plaintiff with MS in 2009, based on a brain MRI "consistent with fairly advanced multiple sclerosis." AT 340. Plaintiff saw Dr. Dengel again in 2011, and also in January 2012, the alleged beginning of the disability period. AT 481-482. Dr. Dengel continued to treat plaintiff for the next four years, and in 2015 and 2016 filled out forms concerning plaintiff's functional impairments, which the ALJ summarized as follows:

> Dr. Dengel filled out a Residual Functional Capacity Questionnaire about the claimant on September 13, 2016. The doctor found the claimant unable to perform even less than sedentary work since January of 2012.[2] Dr. Dengel also filled out a Headache Residual Functional Capacity Questionnaire on September 13, 2016. The doctor again found the claimant unable to perform even less than sedentary work.[3] Dr. Dengel filled out another Physical Impairment Questionnaire on October 27, 2016, again finding the claimant to be significantly limited and unable to perform even less than sedentary work.[4]

AT 23.

Of these opinions, the ALJ wrote:

> The undersigned accords little weight to the opinions of Dr. Dengel because the doctor's opinions are entirely inconsistent with the other opinions in the medical record and they are not supported by the evidence of record, including the doctor's own treatment notes. Dr.

---

[2] AT 583-585.
[3] AT 588-590.
[4] AT 707-709.

5

> Dengel's treatment notes dictate the claimant's complaints, but they do not contain any neurological or physical examinations or objective findings except for the Timed Walk and Peg Test. The doctor's opinions appear to be solely based on the claimant's subjective complaints.

AT 23-24, citing AT 332-341 (Dr. Dengel's treatment notes, 2012-2014), AT 721-752 (treatment notes, 2015-2016). Three other physicians found plaintiff capable of performing light work: State agency consultant Dr. Pan, State agency consultant Dr. Nasrabadi, and consultative examiner Dr. Boparai. AT 23; see AT 62-64, 75-77, 558-562. The ALJ found plaintiff less than fully credible as to the intensity, persistence, and limiting effects of her symptoms, as discussed below. AT 22.

Plaintiff argues that the ALJ wrongly found that Dr. Dengel's opinions were not supported by objective evidence, as Dr. Dengel's administration of the 9-Hole Peg Test and 25-Foot Walk test at every visit[5] were standard components of the MS Functional Composite Test for MS patients[6], and Dr. Dengel "was doing exactly what was required of any physician providing [MS] treatment." (ECF No. 12 at 17.) The ALJ noted these tests, however, along with Dr. Dengel's October 2016 assessment of "relapsing remitting multiple sclerosis, on Copaxone with periods of past non-compliance." AT 21, 726. The ALJ further noted the "generally stable findings on MRIs of the claimant's brain and cervical spine over the past several years[7]" and the "generally normal findings upon physical examinations, including normal ranges of motions of the major joints, normal coordination, full motor strength, and intact sensation." AT 24; see, e.g., AT 434 (at July 2012 exam, Dr. Dengel noted normal strength, normal coordination, and intact sensation

---

[5] Dr. Dengel's notes show that he administered both tests to plaintiff several times per year in 2011, 2012, and 2013, and once in 2014. AT 722-724, 768-771.

[6] "The T25-FW is a quantitative mobility and leg function performance test based on a timed 25-walk. It is the first component of the MSFC to be administered at each visit." See https://www.nationalmssociety.org/For-Professionals/Researchers/Resources-for-Researchers/Clinical-Study-Measures/Timed-25-Foot-Walk-(T25-FW) (last visited June 21, 2019). "The 9-HPT is a brief, standardized, quantitative test of upper extremity function. It is the second component of the MSFC to be administered at each visit. Both the dominant and non-dominant hands are tested twice." See https://www.nationalmssociety.org/For-Professionals/Researchers/Resources-for-Researchers/Clinical-Study-Measures/9-Hole-Peg-Test-(9-HPT) (last visited June 21, 2019).

[7] See AT 481, 597, 599, 726.

except for the first two fingertips of her left hand), AT 464 (at April 2012 exam, Dr. Dengel noted normal strength, normal sensation in her upper extremities, and a normal heel, toe, and tandem gait). Given the opinions and evidence outlined above, the ALJ supplied legally adequate reasons for rejecting Dr. Dengel's 2016 opinions as to functional impairments.

Dr. Dengel also made mental capacity assessments of plaintiff in 2015 and 2016. The ALJ addressed these opinions as follows:

> Dr. Dengel filled out a Mental Capacity Assessment about the claimant on March 18, 2015.[8] The doctor found the claimant to have marked limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and work in coordination with or in proximity to others without being distracted by them. The doctor also found the claimant to have marked limitations in her ability to accept instructions and respond appropriately to criticism from supervisors. Dr. Dengel filled out another Mental Capacity assessment about the claimant on September 13, 2016 [which] remained essentially unchanged.[9] Dr. Dengel filled out yet another Mental Capacity Assessment Questionnaire about the claimant on October 27, 2016. In just one month, the doctor now found the claimant to additionally have marked limitations in her ability to understand, remember, and carry out detailed instructions. The doctor also found the claimant to have extreme limitations in her ability to maintain attention and concentration for extended periods and complete a normal workday or workweek.[10]

AT 25.

The ALJ gave partial weight to the opinions of psychiatric evaluator Dr. Michael Cohn and State agency consultant Dr. Harvey Bilk, both of whom assessed plaintiff's mental functioning, but gave little weight to the above opinions of Dr. Dengel. AT 22, 24-25. "The undersigned accords little weight to the opinion of Dr. Dengel because the doctor's opinion is entirely unsupported by any objective testing or findings and the doctor appears to rely entirely on the claimant's subjective complaints," the ALJ wrote. AT 25.

The ALJ noted that, at the time of Dr. Cohn's 2014 psychiatric evaluation, plaintiff "had no history of psychiatric treatment"[11] and, per Dr. Cohn, displayed "a normal stream of mental

---

[8] AT 572-574.
[9] AT 583-584.
[10] AT 703-705.
[11] In March 2014, Dr. Dengel noted that plaintiff had "not started counseling per the previously

7

activity and thought content." AT 22; see AT 565-569. Dr. Bilk similarly found plaintiff to have milder limitations than Dr. Dengel opined. AT 77-79. The ALJ concluded that

> Dr. Bilk's opinion is the most consistent with the medical record, but the undersigned gives the claimant herself the benefit of the doubt and reduces her to work limited to simple, routine, and repetitive tasks with only occasional face to face interaction with the public. The undersigned finds that greater limitations are not supported by the record, as the medical evidence shows that the claimant had only taken psychiatric medication prescribed by her primary care provider and she had not treated regularly with a mental health professional. In addition, the claimant testified at the hearing that she is not currently on any psychiatric medications.[12] Furthermore, . . . the medical record shows that she had generally normal findings on cognitive and mental examinations. Overall, the claimant's subjective complaints and allegations of problems with memory and concentration are not supported to the extent that would render her unable to perform even unskilled work.

AT 25 (some record citations omitted). Here as above, the ALJ provided legally sufficient reasons for rejecting Dr. Dengel's opinions as to mental impairments.

### B. Residual Functional Capacity

Plaintiff next claims that the RFC fails to account for plaintiff's moderate limitations in concentration, persistence, and pace. As noted above, the RFC limits plaintiff to "simple, routine, and repetitive tasks." AT 19.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). In Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008), the Ninth Circuit held that an RFC adequately captures restrictions related to concentration, persistence, or pace when the assessment is consistent with restrictions identified in the medical testimony. See

---

discussed plan." AT 755.

[12] AT 47-48.

8

also, e.g., Schmidt v. Colvin, No. 2:12-cv-00016 KJN, 2013 WL 5372845, at *17 (E.D. Cal. Sept. 25, 2013) ("'Moderate' mental limitations are not necessarily inconsistent with an RFC for 'simple' tasks, as long as such assessment is generally consistent with the concrete restrictions identified in the medical evidence."), citing Stubbs-Danielson, 539 F.3d at 1174.

Plaintiff contends that the ALJ erred because the RFC did not reflect the Step Two and Three findings that plaintiff "is found to have no more than moderate limitation in concentrating, persisting, and maintaining pace." AT 17-18. Plaintiff claims that moderate limitations in these areas are inconsistent with the RFC for simple, routine, repetitive tasks.

In Guerrero v. Colvin, 2016 WL 566172 (E.D. Cal. Sept. 29, 2016), the district court addressed a similar argument, concluding that the RFC for simple, routine, repetitive tasks was "generally consistent with the restrictions identified in the medical evidence" and not erroneous under Stubbs-Danielson. Similarly, here, the ALJ gave partial weight to the opinion of Dr. Cohn, who opined that plaintiff 'was able to understand, remember, and carry-out simple one or two step job instructions as well as detailed and complex instructions"; and to the opinion of Dr. Bilk, who opined that plaintiff could "understand, remember, and carry-out simple and detailed but not complex instructions." AT 24-25. The ALJ also noted plaintiff's "generally normal findings on cognitive and mental status examinations." AT 25. Rather than fully adopt the opinions of Dr. Cohn and Dr. Bilk, however, the ALJ gave plaintiff the "benefit of the doubt" as to her subjective symptoms and limited her to "simple, routine, and repetitive tasks with only occasional face to face interaction with the public." AT 25.

Because the RFC was generally consistent with the restrictions on concentration, persistence, and pace identified in the medical evidence, the undersigned finds no error on this basis.

C. Credibility

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

9

Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief"). "An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient[.]" Treichler, 775 F.3d at 1103 (internal quotations and citation omitted). "The ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints." Id., citing Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (internal quotations omitted).

Here, the ALJ found that plaintiff's statements about her symptoms were not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AT 22. The ALJ continued:

> The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Her social activities and tasks requiring understanding, remembering, and concentrating, were detailed above in the section on the "paragraph B" criteria.[13] Treatment notes [in 2013] indicate that the claimant went on vacation in March, started an intense home workout, and just came back from a ten day trip.[14] Treatment notes [in 2013] indicate that the claimant and her family had been throwing parties on their boat.[15] She stated that she had been overdoing things, standing and walking around for longer periods.[16] The claimant informed Dr. Boparai [in 2014] that she was independent with activities of daily living such as dressing, grooming, and bathing. She stated that she cooked once a day, vacuumed and mopped, and was able to do the laundry and wash the dishes.[17] The claimant informed Dr. Cohn [in 2014] that during the day, she cared for her personal hygiene, cooked, did chores, did some cleaning, watched television, used the computer, and cared for her pets.[18] Treatment notes [in March 2015] indicate that the claimant had done a lot of traveling since her last visit on January 27, 2014.[19] Treatment notes [in 2016] indicate that the claimant started yoga.[20] Overall, the claimant's varied activities of daily living are

---

[13] The ALJ's decision noted that plaintiff homeschooled her three children, prepared meals, cleaned the house, took care of the family dog, shopped online and in person, and could pay bills and handle cash. (AT 18.) The ALJ further noted that plaintiff was alert, oriented, able to spell simple words and do simple mathematics in exams with Dr. Cohn and Dr. Boparai. (AT 18.)
[14] AT 357.
[15] AT 350.
[16] AT 350.
[17] AT 559.
[18] AT 566.
[19] AT 755.
[20] AT 728.

| | |
|---|---|
| 1 |    inconsistent with a complete inability to perform substantial gainful activity. |
| 2 | |

AT 22-23. The ALJ reasonably concluded that plaintiff's many and varied activities showed that she was more functional than she claimed. See Valentine v. Comm. Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (ALJ properly considered claimant's activities in discounting his credibility, as activities suggested that his "claims about the severity of his limitations were exaggerated.").

  As the ALJ specified which evidence undermined plaintiff's claims of incapacity, the court finds no error on this basis.

CONCLUSION

  For the reasons stated herein, IT IS HEREBY ORDERED that:

  1. Plaintiff's motion for summary judgment (ECF No. 12) is denied;

  2. The Commissioner's cross-motion for summary judgment (ECF No. 13) is granted; and

  3. Judgment is entered for the Commissioner.

Dated: July 12, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/hopkins0855.ssi.ckd

11